IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| **BIXBY, ADAM**, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TOYOTA MOTOR NORTH AMERICA, INC.**<br><br>and<br><br>**TOYOTA MOTOR SALES, U.S.A., INC.**<br><br>Defendants. | Case No. 2:22-cv-00059-DLB-CJS<br><br>Judge: Hon. David L. Bunning |

**MOTION TO COMPEL ARBITRATION, DISMISS PLAINTIFF'S CLASS CLAIMS, AND DISMISS OR STAY PLAINTIFF'S INDIVIDUAL CLAIMS**

Plaintiff Adam Bixby ("Plaintiff") sued Defendants Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc. ("Defendants") in derogation of his contractual promise to arbitrate. This Court should compel Plaintiff's claims to individual arbitration.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On May 4, 2022, Plaintiff sued Defendants, alleging interference with rights under the Family and Medical Leave Act ("FMLA"). Plaintiff purports to bring a class action, supposedly on behalf of others similarly situated.

Previously, however, Plaintiff entered into an arbitration agreement (the "Agreement"), in which Plaintiff agreed to "resolve through mandatory binding arbitration any and all past, present, and future claims, disputes or controversies, whether or not arising out of or relating to

[Plaintiff's] employment and/or cessation of employment with [Defendants.]" Declaration of Jagpreet Bodker ("Bodker Decl.") ¶ 7, Exh. A, p. 1. In the Agreement, Plaintiff "waive[d] any right to bring on behalf of persons other than [himself], or to otherwise participate with other persons in, any class or collective action." *Id.*, p. 5.

On July 22, 2022, counsel for Defendants contacted Plaintiff's counsel to remind them of the existence of the Agreement and inform them that, if Plaintiff did not stipulate to arbitrate his individual claims and dismiss the Complaint (or, at minimum, stay proceedings in this Court pending arbitration), Defendants would move to compel individual arbitration and dismiss Plaintiff's class claims. Declaration of Zachary P. Hutton ("Hutton Decl.") ¶ 2, Exh. A. Plaintiff's counsel refused. *Id.* ¶ 3, Exh. B.

## II. THIS COURT SHOULD COMPEL ARBITRATION

A binding arbitration agreement covers the claims asserted here. This Court should compel arbitration.

### A. The Federal Arbitration Act Requires Enforcement Of Arbitration Agreements According To Their Terms.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, permits a party to a written arbitration agreement to petition for an order compelling the parties to arbitrate. In relevant part, the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

*Id.* § 4.

The FAA "manifests 'a liberal federal policy favoring arbitration agreements.'" *Masco*

*Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, under the FAA, a district court "must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008) (citations omitted). Where a dispute falls within the scope of a valid agreement to arbitrate, the FAA requires the district court to direct the parties to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### B. The Agreement Covers Plaintiff's Claims.

This Court should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986). Accordingly, "[a]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Masco*, 382 F.3d at 627 (citation and internal quotation marks omitted).

Here there is no doubt. The Agreement applies to "all claims, disputes or controversies" between Plaintiff and Defendants that otherwise would be subject to litigation, "whether or not arising out of or relating to [Plaintiff's] employment and/or cessation of employment with [Defendants]." Bodker Decl. Exh. A, p. 1.

### C. The Agreement Is Valid.

Plaintiff made a valid agreement to arbitrate with Defendants, as shown below.

#### 1. The Agreement is an enforceable contract.

In determining whether a valid contract to arbitrate exists, a federal court applies ordinary state-law principles that govern contract formation. *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463,

3

473 (2015) (reversing a California state court that had failed to do so); *see also Aldrich v. Univ. of Phoenix, Inc.*, 661 F. App'x 384, 390 (6th Cir. 2016) (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003)); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). Arbitration agreements are presumed to be valid; the party seeking to avoid arbitration bears the burden of demonstrating otherwise. *See, e.g.*, *Jackson v. Legacy Health Servs., Inc.*, 640 S.W.3d 728, 732 (Ky. 2022); *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017); *Johnson v. BLC Lexington SNF, LLC*, No. CV 5:19-064-DCR, 2019 WL 2476739, at *4 (E.D. Ky. June 13, 2019).

"In order to show validity of an arbitration agreement, Kentucky law provides for a burden-shifting framework[.]" *Milliman, Inc. v. Roof*, 353 F. Supp. 3d 588, 599 (E.D. Ky. 2018) (citation omitted). Initially, the party moving to compel arbitration "has the burden of establishing [the agreement's] existence," which it meets "by providing copies of a written and signed agreement to arbitrate." *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (defendant seeking to compel arbitration met burden, "having provided a signed copy of the Customer Sales Order with the arbitration provision") (internal alterations omitted) (citing *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)); *see also Milliman*, 353 F. Supp. 3d at 599 (same); *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. Feb. 8, 2016) (same).[1] The

---

[1] Although these cases describe a signed agreement (like the signed Agreement here), "an employee can be bound by an arbitration agreement, even without a signature, when he or she demonstrates acceptance of the agreement by continuing to work for the employer." *Aldrich*, 661 F. App'x at 390 (compelling arbitration and dismissing action where plaintiffs were provided handbook containing arbitration provision, despite plaintiffs' submission of declarations denying acknowledgment of handbook) (citing *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 727 (W.D. Ky. 2014); *Spears v. Carhartt, Inc.*, 215 S.W.3d 1, 9 (Ky. 2006); *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 362 (Ky. 2005)); *see also Mitchell v. Cambridge Franchise Holdings, LLC*, 433 F. Supp. 3d 1064, 1071 (W.D. Ky. 2020) ("Even if

4

burden then shifts to the opposing party, which has the "heavy burden" of proving no agreement to arbitrate exists. *MHC Kenworth*, 392 S.W.3d at 906.

Defendants have met their burden by providing the Court a copy of the written and signed agreement to arbitrate. *See* Bodker Decl. Exh. A. Thus, it is Plaintiff's heavy burden to prove—despite this written and signed agreement—that no agreement to arbitrate exists. This he cannot do.

### 2. The Agreement is not unconscionable.

Plaintiff cannot credibly claim that the Agreement is unconscionable.

#### a. Kentucky's unconscionability test.

"Kentucky courts consider the doctrine of unconscionability to be a narrow exception to the rule that 'absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms.'" *Preferred Care, Inc. v. Aaron*, No. CV 16-285-DLB, 2017 WL 3319378, at *8 (E.D. Ky. Aug. 3, 2017) (Bunning, J.) (quoting *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012)). The party seeking to avoid arbitration bears the burden of proving unconscionability. *See Schnuerle*, 376 S.W.3d at 575 ("The party seeking to avoid the arbitration agreement has a heavy burden. . . . As such, we begin our review with a strong presumption that the general arbitration clause is not unconscionable.") (citation omitted). "[R]eview of arbitration clauses for unconscionability involves a two step process—first, a review focused on the procedures surrounding the making of the arbitration clause (procedural unconscionability) and second, a

---

Plaintiff did not sign the Agreement, the matter is still arbitrable. Under Kentucky law, a party can be bound to an unsigned arbitration agreement if his or her actions indicate acceptance of the contract. . . . An employee's continued employment can demonstrate acceptance of an arbitration agreement.") (citations omitted). That provides a second independent reason why Plaintiff is bound by the Agreement.

5

review of the substantive content of the arbitration clause (substantive unconscionability)." *Schnuerle*, 376 S.W.3d at 575-76 (citation omitted). The doctrine of unconscionability "is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citation and quotation marks omitted). Indeed, the Kentucky Supreme Court has held that "[a]n unconscionable contract is 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" *Schnuerle*, 376 S.W.3d at 575 (citation omitted); *see also Aaron*, 2017 WL 3319378, at *8 (same).

As shown below, the Agreement is neither procedurally nor substantively unconscionable.

### b. The Agreement is not procedurally unconscionable.

"Procedural, or 'unfair surprise,' unconscionability 'pertains to the process by which an agreement is reached and the form of an agreement[.]'" *Schnuerle*, 376 S.W.3d at 576 (citation omitted). "Factors relevant to the procedural unconscionability inquiry include the bargaining power of the parties, 'the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice.'" *Id.* (citation omitted).

### i. Kentucky law permits employers to condition employment on agreements to arbitrate.

Kentucky law expressly permits employers to condition future or continued employment on an employee's agreement to arbitrate claims. KY. REV. STAT. § 336.700(3)(a); *see also Moseley v. Signature Healthcare, LLC*, No. 3:19-CV-00341-JRW, 2020 WL 3977663, at *1

6

(W.D. Ky. July 14, 2020) (rejecting plaintiff's argument that conditioning employment on arbitration agreement was procedurally unconscionable; "this condition is expressly allowed under Kentucky law"); *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557, 564 (E.D. Ky. 2019) (discussing statutory amendment to permit agreements to be formed as a condition of hire).[2] Thus, to the extent Plaintiff contends that conditioning his employment on his agreement to arbitrate makes the Agreement procedurally unconscionable, state law squarely forecloses that argument.

### ii. The Agreement is conspicuous and comprehensible.

An arbitration clause in a contract may be invalid where "'[u]nfair surprise' can result from the use of 'fine print and convoluted or unclear language[.]'" *Aaron*, 2017 WL 3319378, at *8 (quoting *Schnuerle*, 376 S.W.3d at 576). In *Aaron*, the Court found no procedural unconscionability where the arbitration agreement was "not concealed or disguised within [a preprinted] form[,]" but rather was "a stand-alone, five-page document titled 'Alternative Dispute Resolution Agreement—Kentucky'" and was "written in clear terms, with normal-sized font and

---

[2] Even before the legislature amended section 336.700(3)(a) in 2019, conditioning future or continued employment on an employee's agreement to arbitration was insufficient to establish unconscionability. *See, e.g.*, *Walker v. MDM Servs. Corp.*, 997 F. Supp. 822, 825 (W.D. Ky. 1998) ("There must be evidence of fraud or coercion beyond mere unequal bargaining power to find the arbitration agreement unconscionable"); *Rodriguez v. Cracker Barrel Old Country Store, Inc.*, No. 2:17-CV-20 (WOB-CJS), 2017 WL 6349173, at *6 (E.D. Ky. Dec. 12, 2017) ("Plaintiff juxtaposes her status as a young waitress in need of continued employment with Defendant's status as a national company who inserted this arbitration agreement into Plaintiff's on-going employment training after being employed for approximately seven months. . . . However, although a relevant consideration, uneven bargaining power between the parties remains insufficient by itself to establish unconscionability. . . . Instead, Plaintiff must demonstrate that the arbitration agreement was sufficiently 'one-sided, oppressive, and unfairly surprising' that no sound-minded individual would accept Defendant's offer.") (citations omitted); *Johnson v. Career Sys. Devs.*, No. CIV. A. 4:09CV-76-M, 2010 WL 292667, at *4 (W.D. Ky. Jan. 20, 2010) ("[P]laintiff has not alleged that she could not find employment elsewhere, only that she did not want to risk losing her job of 20 years. The Court does not find that these allegations are sufficient to justify a finding of procedural unconscionability.") (citing *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 501-02 (6th Cir. 2004)).

conspicuous bold headings." *Id.*; *see also BLC Lexington SNF, LLC v. Petersen*, No. 5:19-CV-00465-GFVT, 2020 WL 3130292, at *13 (E.D. Ky. June 12, 2020) (arbitration agreement did not fall into "narrow category" of unconscionability, in part because agreement had "the conspicuously bold title, 'AGREEMENT TO ARBITRATE,'" was written in "normal size font" and "in a manner that [was] easy to understand"); *Nsaif v. The Cheesecake Factory*, No. 3:17-CV-641-CHB, 2018 WL 5045212, at *3-4 (W.D. Ky. Oct. 17, 2018) (finding employee's arbitration agreement not unconscionable; the agreement "was a stand-alone document, was written in normal-sized font, and used clear language").

Plaintiff's Agreement has the same transparency features as the agreements in *Aaron*, *Petersen* and *Nsaif*. The Agreement is a six-page, standalone document that Plaintiff received and signed during new-hire orientation. Bodker Decl. ¶ 7, Exh. A. Its title—"ONE TOYOTA ARBITRATION AGREEMENT"—is in large, capitalized type, and the balance of the Agreement uses plain English (not legalese), normal-size type, and boldface, underlined headings. *Id.* There is no reasonable argument that Toyota hid the nature or significance of the Agreement from Plaintiff.

        **c.**    **The Agreement is not substantively unconscionable and its terms are not oppressive.**

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Energy Home*, 406 S.W.3d at 835 (citing *Schnuerle,* 376 S.W.3d at 577). "When reviewing for substantive unconscionability, consideration is given to 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Id.* (quoting *Schnuerle,* 376 S.W.3d at 577).

Plaintiff assented to the Agreement in its entirety (*see* section II.C.2.b.i., *supra*), and no term of the Agreement is remotely unfair. Under Kentucky law, when an employer conditions future or continued employment on the employee's agreement to arbitrate claims, the arbitration "shall safeguard the effective vindication of legal rights," including:

> **(a)** Providing a reasonable location for the arbitration;
>
> **(b)** Mutuality of obligation sufficient to support the agreement to arbitrate;
>
> **(c)** Ensuring procedural fairness for the parties to access arbitration, including a fair process for selecting an impartial arbitrator and the equitable, lawful allocation of arbitration costs between the parties;
>
> **(d)** Ensuring that the parties to the agreement shall have at least one (1) channel for the pursuit of a legal claim, either by requiring the claim to be arbitrated individually pursuant to the agreement or otherwise; and
>
> **(e)** Empowering the arbitrator to award all types of relief for a particular type of claim that would otherwise be available for a party through judicial enforcement, including punitive damages as provided by law.

KY. REV. STAT. ANN. § 336.700(5). The Agreement safeguards these rights. Under the Agreement, **(a)** arbitrations "shall take place in the county (or comparable governmental unit) in which the Employee is or was last employed by Company, unless the parties mutually agree to a different location" (Bodker Decl. Exh. A, p. 2); **(b)** Defendants must arbitrate their claims against Plaintiff just as Plaintiff must arbitrate his claims against Defendants (*id.*, p. 1); **(c)** arbitrations "shall be administered pursuant to the JAMS Employment Arbitration Rules & Procedures" (*id.*, p. 2), all parties have the right to be represented by legal counsel (*id.*, p. 3), arbitrators are selected by the parties' mutual agreement or pursuant to the JAMS Rules (*id.*, p. 3), and Defendants in the first instance assume the arbitrator's fees and costs (*id.*, p. 4);

9

**(d)** Plaintiff may pursue legal claims through individual arbitration (*id.*, pp. 1, 5); and **(e)** the arbitrator "shall apply the substantive law and the law of remedies, if applicable, of the state in which the Claim arose, or federal law, or both, as applicable to the Claim(s) asserted" (*id.*, p. 3). In light of these safeguards, Plaintiff cannot reasonably contend the Agreement's terms are unfair or oppressive.

To the extent Plaintiff contends that the class- and collective-action waiver renders the Agreement unreasonable or oppressive, he is wrong. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) (state judicial rule that class arbitration waivers are unconscionable in certain circumstances was preempted by FAA; "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."); *Williams v. Dearborn Motors 1, LLC*, No. 20-1351, 2021 WL 3854805, at *1 (6th Cir. Aug. 30, 2021) ("[T]he Supreme Court has repeatedly affirmed the validity of class waiver policies under the Federal Arbitration Act and federal labor laws"); *Eaves-Leonos v. Assurant, Inc.*, No. CIV.A. 3:07-CV-18-S, 2008 WL 80173, at *7 (W.D. Ky. Jan. 8, 2008), *as amended* (Jan. 10, 2008) ("Assuming [*arguendo*] Kentucky law were applicable, the class action waiver cannot be said to render the arbitration agreement substantively unconscionable").

### d.   Any unconscionable provision should be severed and the remainder of the Agreement enforced.

"Under Kentucky law, the unenforceability of a particular provision in a contract does not render the entire agreement unenforceable or unconscionable" where "the [offending] clause is severable from the agreement to arbitrate." *Brookdale Senior Living Inc. v. Hibbard*, No. CIV.A. 5:13-289-KKC, 2014 WL 2548117, at *7 (E.D. Ky. June 4, 2014) (citations omitted); *see*

*also Roberts v. Blue World Pools, Inc.*, No. 3:15-CV-00335-TBR, 2015 WL 5315213, at *5 (W.D. Ky. Sept. 11, 2015) ("[Sixth Circuit case law] reinforces the standard that a severability provision may salvage an arbitration agreement that contains an unconscionable provision") (citing *Cooper*, 367 F.3d at 512).  In *Miller v. TLC Resorts Vacation Club, LLC*, for example, the parties' arbitration agreement contained a severability clause that allowed the court to "strike [an] unacceptable arbitrator selection process [from the agreement] while leaving the rest of the arbitration provision intact."  No. 4:18-CV-00070-JHM, 2018 WL 6671511, at *3 (W.D. Ky. Dec. 19, 2018); *see also Est. of Green Through Moore-Stewart v. LP Louisville S., LLC*, No. 2018-CA-000738-MR, 2020 WL 3401188, at *6 (Ky. Ct. App. June 19, 2020) (affirming order compelling arbitration; "The plain language of the agreement expressly considers the possibility that the NAF and its rules might be unavailable, making the provision severable so that the agreement as a whole would survive and remain enforceable.  We reiterate, as a general rule, 'Kentucky law favors arbitration agreements.'") (citation omitted); *Landmark of Iroquois Park Rehab. & Nursing Ctr., LLC v. Gill*, No. 2020-CA-1362-MR, 2022 WL 2182676, at *7 (Ky. Ct. App. June 17, 2022) (unpublished) (arbitration agreement did not fail for unconscionability because if provision limiting liability was unconscionable, arbitration panel could sever provision from enforceable terms of agreement).

Plaintiff's Agreement is neither procedurally nor substantively unconscionable, and should therefore be enforced according to its terms.  *See Adell v. Cellco P'ship*, No. 21-3570, 2022 WL 1487765, at *3 (6th Cir. May 11, 2022) ("'[C]ourts must 'rigorously enforce' arbitration agreements according to their terms.'") (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).  However, the Agreement does contain a severability provision.  Bodker Decl. Exh. A, p. 6.  Therefore, even if this Court were to find one (or more)

11

unconscionable provisions in the Agreement, the appropriate remedy would be to sever or limit it (or them) and then enforce the rest of the Agreement.

### D. Plaintiff's Attempt To Avoid Arbitration Lacks Merit.

Plaintiff's counsel has claimed that the Agreement does not cover "class-wide claims for a preliminary injunction" because parties may bring "court actions seeking provisional remedies in aid of arbitration, including temporary restraining orders and preliminary injunctions, where such actions are otherwise available by law[.]" Hutton Decl. ¶ 3, Exh. B; *see also* Bodker Decl. Exh. A, p. 1. Plaintiff's invocation of the "in aid of arbitration" provision fails for multiple reasons.

First, Plaintiff's insistence on litigating before this Court dispatches any notion that this action is "in aid of arbitration." Temporary equitable relief in aid of arbitration requires, among other things, a showing that "the injunction will save [Plaintiff] from irreparable injury[.]" *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). Plaintiff cannot make that showing. He waited over a month to serve the Complaint on Defendants. *Compare* Dkt. No. 1 (Complaint filed May 4, 2022), *with* Dkt. Nos. 17, 18 (summons and Complaint served June 21, 2022). Plaintiff requested temporary relief for himself in the form of additional unpaid leave (Dkt. No. 8), but Defendants voluntarily granted that relief (Dkt. No. 21), and no other request for interim relief is pending. And Plaintiff still has made no claim in arbitration (for temporary relief or otherwise), despite filing his Complaint three months ago (Hutton Decl. ¶ 4) and acknowledging that the Parties entered into a binding agreement to arbitrate claims on an individual basis (Dkt. No. 21, pp. 1-2). Rather than seeking temporary relief in aid of arbitration, Plaintiff's conduct shows he is attempting to evade altogether his contractual promise to arbitrate his claims.

Courts have long recognized that arbitration provisions allowing court actions "in aid of arbitration" allow parties to seek temporary restraining orders *solely to preserve the status quo before and during arbitration*, not to avoid arbitration altogether by asserting equitable claims. In *Ferguson Enterprises, Inc. v. Hollenkamp*, No. 3:15-CV-656-DJH-DW, 2015 WL 6126844, at *2 (W.D. Ky. Oct. 16, 2015), for example, the parties' arbitration agreement contained a provision virtually identical to the one at issue here: "the Agreement does not prohibit the filing of or pursuit of relief through . . . a court action for temporary equitable relief in aid of arbitration, where such an action is otherwise available by law." The court observed that the plaintiff's attempt to seek preliminary injunctive relief had, "indirectly, aided the arbitration process by providing a course for preliminary discovery on an expedited schedule[,]" but "holding an evidentiary hearing and making the necessary findings following the hearing would not merely aid the arbitration, but essentially supplant it." *Id.* at *3. As the court observed, "[t]his would frustrate the policy of deferring to arbitration in those cases, like this one, where arbitration is well suited to resolve the issues between the parties." *Id.* (citation omitted). Finding "no compelling reason to disregard that policy[,]" the court found "arbitration to be the appropriate forum for both injunctive relief and all damages claims against the Individual Defendants." *Id.* at *2.

In *Meyer v. Fifth Third Bank*, the Ninth Circuit likewise held that the plaintiff's equitable claims for specific performance and an injunction to enforce a stock purchase agreement were "not 'in aid of arbitration,' as they [were] not aimed at preserving the status quo until the dispute may be resolved by an arbitrator[.]" 842 F. App'x 104, 106 (9th Cir. 2021) (citing *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010)). Rather, the plaintiff's complaint sought to "remedy [the defendant's] alleged breach of contract." *Id.*

13

Because "[o]nly the arbitrator [could] grant that relief," the district court "correctly held that it lacked the power to adjudicate [the plaintiff's] claims, and appropriately exercised its discretion to dismiss the case." *Id.*

And, similar to Plaintiff here, the plaintiff in *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 215 (S.D.N.Y. 1993), contended that its civil action fell outside the scope of the parties' arbitration agreement, because the agreement allowed the parties to "seek 'from any judicial courts of proper jurisdiction equitable relief by way of temporary and permanent injunctions[,]'" and the plaintiff's complaint was "drafted in the form of a demand in equity for specific performance." The court disagreed, reasoning that the plaintiff's interpretation "would, solely on the basis of the form of relief sought, significantly narrow the [agreement's] broad provision for arbitration[,]" a result that would contravene federal public policy and was unsupported by any case decided under the FAA. *Id.* at 217-18. Under a construction of the agreement consistent with the broad arbitration provision and "more closely in tune with federal public policy," the provision allowing court actions for injunctive relief merely allowed the plaintiff to "seek a preliminary injunction in this Court *pending resolution of the merits by arbitration*"—*i.e.*, an injunction to preserve the status quo. *Id.*[3]

Second, Plaintiff's counsel has suggested that Plaintiff's interpretation "is particularly proper since, as the drafter, the Agreement will be construed against Toyota." Hutton Decl. ¶ 3, Exh. B. In fact, the Supreme Court has "repeatedly held that ambiguities about the scope of an

---

[3] *See also Bolden v. DG TRC Mgmt. Co., LLC*, No. 19-CV-3425 (KMW), 2019 WL 2119622, at *5 (S.D.N.Y. May 15, 2019) (same); *Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021) (plaintiff's motion for preliminary injunction requiring defendant to comply with its terms and conditions would not "preserve the meaningfulness of arbitration[,]" but rather "'reclaim for the judiciary a matter assigned by the parties to arbitration' by prejudging the question at the center of Plaintiffs' claims.'") (citation and internal alteration omitted).

14

arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019). In other words, the rule favoring arbitration restricts the contract interpretation rule that Plaintiff's counsel cites, because the latter interferes with the federal policy favoring enforcement of arbitration agreements. *Id.* at 1417 ("Although the rule enjoys a place in every hornbook and treatise on contracts, we noted in a recent FAA case that 'the reach of the canon construing contract language against the drafter must have limits, no matter who the drafter was.'") (citation omitted). In *Lamps Plus*, for instance, the Court held that "[t]he general *contra proferentem* rule [*i.e.*, the rule construing ambiguous contractual provisions against the drafter] cannot be applied to impose class arbitration in the absence of the parties' consent." *Id.* at 1418 (footnote omitted) (noting decision "is consistent with a long line of cases holding that the FAA provides the default rule for resolving certain ambiguities in arbitration agreements"); *see also DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015) (even if contractual language were ambiguous, "the reach of the canon construing contract language against the drafter must have limits, no matter who the drafter was"). Likewise, the Sixth Circuit "has stated . . . forcefully that any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503-04 (6th Cir. 2007) (("In the absence of any express provision excluding a particular grievance from arbitration only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail") (internal quotations, alterations and citations omitted).

       Here, even if the Agreement were ambiguous (it is not, as *Ferguson*, *Meyer*, and *Remy Amerique* make clear), any doubts as to the Agreement's exception for actions "in aid of arbitration" must be resolved in favor of arbitration.

15

## III. THE COURT SHOULD ORDER PLAINTIFF'S CLAIMS TO INDIVIDUAL ARBITRATION, DISMISS HIS CLASS CLAIMS, AND DISMISS OR STAY HIS INDIVIDUAL CLAIMS

Plaintiff purports to bring his claims on a class-wide basis. *See* Complaint, Dkt. No. 1. Plaintiff should be ordered to arbitrate his claims individually, and not on a class basis, because the Agreement includes a lawful class-action waiver. Bodker Decl. Exh. A, p. 5.

In *Concepcion*, the Supreme Court held that federal law preempted a California state doctrine that deemed unenforceable a class-action waiver in an arbitration agreement. That state-law rule "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and thus "is pre-empted by the FAA." 563 U.S. at 351 (citation omitted) (internal quotation marks omitted). The reason is that class arbitration "sacrifices the principal advantage of arbitration," is "poorly suited to the higher stakes of class litigation," forces defendants to "bet the company with no effective means of review," and is "not arbitration as envisioned by the FAA." *Id.* at 348, 350, 351. The Court held that California must enforce arbitration agreements even if such agreements require that claimants arbitrate their claims individually, instead of on a class basis. Parties to arbitration agreements have "discretion in designing arbitration processes," because "[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Id.* at 344, 351.

Then, in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018), the Court reiterated that, "[i]n the Federal Arbitration Act, Congress has instructed . . . courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."

An enforceable arbitration agreement requires a court to dismiss class claims. *See, e.g.*, *Williams*, 2021 WL 3854805, at *1 (affirming dismissal of class claims; "[T]he Supreme Court

has repeatedly affirmed the validity of class waiver policies under the Federal Arbitration Act and federal labor laws"); *Aldrich*, 661 F. App'x at 387, 391 (affirming dismissal of class-wide employment claims where arbitration agreement contained class-action waiver); *Schnuerle*, 376 S.W.3d at 573 ("We . . . conclude that the Court of Appeals properly affirmed the trial court's dismissal of the putative class action claim").

Here, the Agreement is not ambiguous. It clearly states, under the heading "**Class Action Waiver**," that "[t]o the maximum extent permitted by law, an Employee waives any right to bring on behalf of persons other than him/herself, or to otherwise participate with other persons in, any class or collective action." Bodker Decl. Exh. A, p. 5 (emphasis in original). Accordingly, the Court should order Plaintiff's claims to individual arbitration and dismiss his purported class claims.

Plaintiff's individual claims also should be dismissed. "[S]everal circuit courts, including the Sixth Circuit, hold that when all the plaintiff's claims are subject to arbitration, dismissal is the proper remedy." *McGrew v. VCG Holding Corp.*, 244 F. Supp. 3d 580, 593 (W.D. Ky. 2017) (collecting cases), *aff'd*, 735 F. App'x 210 (6th Cir. 2018); *see also Ohio Valley Aluminum Co., LLC*, 2018 WL 1570792, at *3 ("'[T]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.'") (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); also citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)). In *Ohio Valley*, the court dismissed the complaint, finding that "all issues [were] arbitrable" such that "[r]etaining jurisdiction and staying the action [would] serve no meaningful purpose." 2018 WL 1570792, at *4. Similar decisions abound. *See, e.g.*, *Treved Exteriors, Inc. v. Lakeview Const., Inc.*, No. CIV.A. 13-83-DLB-JGW, 2014 WL 1047117, at *7 (E.D. Ky. Mar. 18, 2014) (Bunning, J.)

(granting motion to dismiss and compelling arbitration); *Wilson*, 385 F. Supp. 3d at 565 (same); *Baker v. Credit Acceptance Corp.*, No. 3:21-CV-00021-GFVT, 2021 WL 3598533, at *3 (E.D. Ky. Aug. 13, 2021) (same); *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 388 (E.D. Ky. 2006) ("[H]aving compelled arbitration on all issues in this case, the Court must dismiss for lack of jurisdiction").  The individual claims asserted by Plaintiff are subject to mandatory arbitration under the Agreement (*see* section II.B., *supra*) and therefore can and should be dismissed.  In the alternative, should the Court decline to dismiss Plaintiff's individual claims, it should stay those claims pending arbitration.  9 U.S.C. § 3.

### IV.   CONCLUSION

Plaintiff contractually promised to individually arbitrate any disputes he might have with Defendants.  Accordingly, Defendants respectfully request that this Court enforce the Agreement and order Plaintiff to submit his claims to individual arbitration.

Dated:  August 10, 2022               Respectfully submitted,

                                       /s/ Zachary P. Hutton
                                       Zachary P. Hutton (CA No. 234737) (*pro hac vice*)
                                       zachhutton@paulhastings.com
                                       Anna M. Skaggs (CA No. 319179) (*pro hac vice*)
                                       annaskaggs@paulhastings.com
                                       Paul Hastings LLP
                                       101 California Street, 48th Floor
                                       San Francisco, CA 94111
                                       Telephone:  (415) 856-7000
                                       Facsimile:  (415) 856-7100

                                       *Attorneys for Defendants Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2022, a true and correct copy of the foregoing **Motion To Compel Arbitration, Dismiss Plaintiff's Class Claims, And Dismiss Or Stay Plaintiff's Individual Claims** was electronically filed using the Court's electronic filing system and served, via the Court's electronic filing system, upon all parties and/or attorneys of record in the above-captioned action.

/s/ Zachary P. Hutton
Zachary P. Hutton

LEGAL_US_W # 112951264.7